Kareem ALI, Plaintiff,

v.

Officer SZABO, et al., Defendants.

No. 98 Civ. 0424(WHP).

United States District Court,
S.D. New York.

Jan. 13, 2000.

I.M.S., Washington, DC, for plaintiff.

Daniel A. Seymour, Bank, Sheer, Servino & Seymour, White Plains, NY, for defendant.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiff Kareem Ali filed this action pursuant to 42 U.S.C. § 1983 against Putnam County Jail Corrections Officers Szabo and Dalo and the Sheriff of the Putnam County Jail alleging use of excessive force, denial of medical treatment, retaliation, and religious discrimination retaliation.

Defendants moved for summary judgment on each of plaintiff's claims pursuant to Fed.R.Civ.P. 56.

This action was referred to Magistrate Judge Peck for general pretrial management, including preparation of a report and recommendation on dispositive motions. Magistrate Judge Peck recommended that defendants' summary judgment motion be granted as to the following claims: plaintiff's excessive force claims against the Sheriff; plaintiff's deprivation of medical treatment claims against each of the defendants; plaintiff's retaliation claims against each of the defendants; and plaintiff's religious discrimination retaliation claims against Corrections Officers Szabo and Dalo.

Magistrate Judge Peck recommended that defendants' summary judgment motion be denied as to the following claims: plaintiff's excessive force claims against Corrections Officers Szabo and Dalo; and plaintiff's claim of religious discrimination retaliation against the Sheriff.

Defendant Sheriff filed timely objections to the report and recommendation (the "Report"). The Sheriff objected to the Report's recommendation to deny summary judgment of plaintiff's religious discrimination retaliation claim.

This Court has reviewed the Report, and made a de novo determination, as required by 28 U.S.C. 636(b)(1), that the Report is legally correct and proper. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In addition, this Court has considered defendant Sheriff's objections to the Report and finds them to be without merit. Viewing the evidence most favorably to plaintiff, this Court agrees with the Report that issues of fact exist as to whether the Sheriff instituted a rule banning headwear that arguably applied to kufis while plaintiff was in Putnam County jail and whether the uncertainty as to the rule's application discouraged plaintiff from wearing his kufi. The Sheriff did not deny that he instituted

a ban on kufis in his Rule 56.1 Statement. Rather, he merely stated that a thorough investigation was conducted as to whether plaintiff would be allowed to wear his kufi and that the law was unclear. (Defs.' Rule 56.1 Stmt. ¶ 29) The Sheriff's reference to plaintiff's letter to Lt. LeFever and Lt. LeFever's response do not resolve all disputed issues of fact. (Obj. To Proposed Findings and Recommendations Ex. A, Ex. B) Additionally, defendant's Rule 56.1 Statement is devoid of any proffered penological reason to support the rule banning headwear. Therefore, this Court adopts the Report in its entirety.

Accordingly, for the reasons set forth in the Report, defendants' motion for summary judgment is granted in part and denied in part.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Pro se plaintiff Kareem Ali brings this 42 U.S.C. § 1983 action against Putnam County Jail Corrections Officers Szabo and Dalo, and the Putnam Sheriff, alleging use of excessive force, denial of medical treatment, and retaliation including religious discrimination. Presently before the Court is defendants' motion to dismiss and for summary judgment.[1]

For the reasons set forth below, because there are material facts in dispute as to whether Officers Szabo and Dalo used excessive force on Ali, I recommend that Officers Szabo and Dalo be denied summary judgment on Ali's excessive force claim. Because Ali does not allege that the Sheriff was personally involved in the excessive force incident or that any of the defendants were personally involved in the deprivation of medical treatment and general retaliation, I recommend that all defendants be granted summary judgment on those claims. Officers Szabo and Dalo also should be granted summary judgment on Ali's religious discrimination retaliation claim for lack of personal involvement. The Sheriff, however, should be denied summary judgment on Ali's religious discrimination retaliation claim because Ali has alleged that the Sheriff instituted a ban on kufis (religious headwear) in violation of his religious freedom, and the Sheriff has not denied that there was a ban nor offered any legitimate penological reason for the alleged ban.

### FACTS

From June 10, 1997 to February 13, 1998, Ali, a federal pretrial detainee, was housed at the Putnam County Jail. (Defs.Rule 56.1 Stmt. ¶¶ 1–5; Ali Dep. at 6, 34.)[2] Ali has pleaded guilty to ten bank robberies, check and credit card fraud, gun running, car thefts and other robberies. (Ali Dep. at 6–7, 10–11.)

Inmates at Putnam were required to wear ID tags on their left breast pocket, but on August 6, 1997, Ali left his cell

---

1. Since the parties have conducted and completed discovery and have submitted documents outside the pleadings for the Court's consideration, the Court analyzes defendants' motion only under summary judgment standards. See, e.g., Fed.R.Civ.P. 12(b)(6) (if on a motion made pursuant to Rule 12(b)(6) "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...."); Mann v. Meachem, 929 F.Supp. 622, 627–28 (N.D.N.Y.1996) ("Discovery is nearly completed in this case, and affidavits have been submitted. Accordingly, the Court will treat this mo-

tion [to dismiss and for summary judgment] as one for summary judgment.").

2. The entire Ali deposition transcript is found at Seymour Aff.Ex. B.
 Plaintiff Ali's Rule 56.1 Statement only "objected to" or "clarified" certain paragraphs of defendants' Rule 56.1 statement, and thus by operation of S.D.N.Y. Local Civil Rule 56.1(c), the statements that Ali did not object to or clarify are admitted. The Court, however, will not cite to Ali's Rule 56.1 Statement for that purpose, and will only cite to it where the Court is relying on material actually in Ali's Rule 56.1 Statement.

without his tag. (Defs.Rule 56.1 Stmt. ¶ 5; Ali Dep. at 50–51, 54.) Officer Dalo saw that Ali was not wearing his tag, and told Ali he would receive a two hour "lock-in" in his cell. (Defs.Rule 56.1 Stmt. ¶ 6; Ali Dep. at 51–52.) Ali, believing that normally a prisoner would receive only a one hour lock-in for not wearing his tag, told Dalo that he was discriminating against him, and that "I've stayed years in a cell at a time, there ain't no big thing, but I do not like someone to discriminate against me." (Ali Dep. at 53; *see* Defs.Rule 56.1 Stmt. ¶ 7.) Ali complied with Officer Dalo's order and went to his cell. (Defs.Rule 56.1 Stmt. ¶ 7; Ali Dep. at 53, 55.)

After two hours, Ali's cell door opened, and Ali went to the day room to heat up a slice of pizza and a cup of coffee in a microwave. (Defs.Rule 56.1 Stmt. ¶ 8; Ali Dep. at 55.) As Ali walked toward the microwave, Officer Dalo approached and told Ali that he was supposed to be locked-in. (Defs.Rule 56.1 Stmt. ¶ 9; Ali Dep. at 55, 57.) Ali said he thought he was given a two-hour lock-in, and Officer Dalo replied, "No, I gave you 23 hours, you said you could do more." (Ali Dep. at 55, 57.) Ali said, "Well, I'm going to heat up my pizza and my coffee." (Ali Dep. at 56.) According to Ali, Officer Dalo told Ali to go back to his cell as soon as he was through heating his food. (Ali Rule 56.1 Stmt. ¶¶ 10, 11; Ali Dep. at 57.) While the food was heating, Ali and Dalo spoke about what Ali meant by being discriminated against. (Ali Rule 56.1 Stmt. ¶¶ 11, 14; Ali Dep. at 58–59.) Officer Dalo told Ali to hurry up, at which point Officer Szabo walked over. (Defs.Rule 56.1 Stmt. ¶ 12; Ali Rule 56.1 Stmt. ¶¶ 12, 14; Ali Dep. at 59, 68–69.) Ali took his pizza out of the microwave and put his coffee in to heat it up. (Defs.Rule 56.1 Stmt. ¶ 13; Ali Rule 56.1 Stmt. ¶ 12; Ali Dep. at 59.) Officer Szabo "screamed, [']Take it out and go to your cell right now.['] " (Ali Dep. at 59; Defs.Rule 56.1 Stmt. ¶ 14.) Ali immediately took the cold coffee out of the microwave and said to Szabo, "You don't got to be screaming on nobody." (Ali Dep. at 59–60; Ali Rule 56.1 Stmt. ¶¶ 13, 14.) Officer Szabo replied, "You just do it." (Ali Dep. at 59.) As Ali walked toward his cell, he yelled at Szabo, "You don't have to be screaming on anybody." (Ali Dep. at 59–60; Defs.Rule 56.1 Stmt. ¶¶ 15, 16; Ali Rule 56.1 Stmt. ¶¶ 14, 16.) According to Ali, as Ali passed Szabo, Szabo bumped into Ali's arm and again told Ali to lock-in to his cell. (Ali Rule 56.1 Stmt. ¶ 16; Ali Dep. at 60–61.) Ali told Szabo that he was on his way to lock-in, and added, "Ain't nobody scared of you, so I don't know what you're screaming for. Ain't nobody scared of you.... You can't intimidate me. You don't scare me." (Ali Dep. at 61, 65–66; Ali Rule 56.1 Stmt. ¶ 16.)

According to Ali, when he reached the staircase, Officer Szabo "attacked" him, hitting Ali in the chest and grabbing his left arm. (Ali Rule 56.1 Stmt. ¶¶ 16, 17, 19; Ali Dep. at 62, 64, 66.) Officer Dalo joined Szabo and banged Ali's back and right hand against the wall. (Ali Dep. at 62, 81.) Ali "grabbed Szabo's neck and threw him off," and broke loose of Dalo. (Ali & Defs. Rule 56.1 Stmts. ¶ 17; Ali Dep. at 62–63, 65.) Officer Szabo again slammed Ali against the wall and Ali "took [Szabo] by the neck and threw ... off [Szabo]." (Ali & Defs.Rule 56.1 Stmts. ¶ 18; Ali Dep. at 63.) The incident ended before other officers arrived. (Ali Rule 56.1 Stmt. ¶ 19; Ali Dep. at 63.) [3]

---

**3.** Since plaintiff Ali is pro se, he did not take the depositions of Officers Szabo or Dalo (or anyone else). Neither Officer Szabo nor Dalo, nor the Sheriff, submitted an affidavit in connection with the defendants' summary judgment motion.

The officers' incident reports are not in the summary judgment record but are contained in Ali's pretrial order exhibits.

While the officers' unsworn reports claim that Ali started the altercation by yelling and having a threatening posture, they concede that it was Officer Szabo who first grabbed at Ali. For example, Officer Szabo's August 6, 1997 Memo to the Sheriff states:

> Ordered inmate ALI to lock in his cell several times. Inmate ALI took a cup of

After the incident, Ali complained of pain in his right hand and his lower back. (Ali Dep. at 69, 81–82.) The next day, Ali went to the Putnam Hospital Center where x-rays of his right hand revealed no broken bones, but an examination showed that Ali had a contusion, with redness and swelling. (Ali & Defs.Rule 56.1 Stmts. ¶ 20; Ali Dep. at 74, 76, 89–90; Seymour Aff.Ex. C: Putnam Progress Notes; Report of Injury; 8/7/97 Report of Consultation; 8/7/97 Putnam Hosp. Ctr. Emergency Rm. Report.) Ali was advised to keep his hand elevated and was given Ibuprofen and an ice pack. (Ali & Defs.Rule 56.1 Stmts. ¶ 22; Seymour Aff.Ex. C: Putnam Progress Notes.)

Subsequently, Putnam's Medical Director Dr. Eric Teitel referred Ali to neurologist Dr. Rothman, who saw Ali in November 1997. (Defs.Rule 56.1 Stmt. ¶ 21; Seymour Aff.Ex. C: 11/25/97 Dr. Rothman Report.) Dr. Rothman found that Ali's third metacarpel was swollen and that Ali had cervical strain. (Seymour Aff.Ex. C: 11/25/97 Dr. Rothman Report.) Dr. Rothman prescribed Advil and muscle relaxants. (*Id.*) Ali thereafter repeatedly sought and received medical treatment for numbness in his back and hand. (Ali Rule 56.1 Stmt. ¶ 22; Defs.Rule 56.1 Stmt. ¶ 24; Ali Dep. at 72–73; Seymour Aff.Ex. C: 8/25/97 Ryan Memo; 9/30/97 Ryan Memo; 8/20/97 Ali Medical Treatment Request; 9/30/97 Ali Medical Treatment Request.)

Ali admits that each time he filled out a written request for medical treatment he was treated, and was only denied treatment when he did not fill out a request form. (Defs.Rule 56.1 Stmt. ¶ 23–24; Ali Dep. at 80–81.) Ali also alleges that he requested medication stronger than Motrin but his request was denied, as was his request for therapy for his hand. (Ali Rule 56.1 Stmt. ¶¶ 22–24; Ali Dep. at 73, 82–84.) At the time of Ali's deposition in March 1999, he still could not straighten

coffee and slice of pizza out of the microwave and walked in my direction while continuing to yell. Inmate ALI brushed against my chest as he walked by me. While officer DALO and myself escorted inmate ALI to his assigned cell told him "just go lock in." Inmate ALI turned to me and said "no one is going to tell me to lock in and discriminate me here!" Inmate ALI stood within one inch of my face continuing to yell. Inmate ALI yelled "Oh now my coffee spilled thats it," he put his coffee down on the floor and stood back up with his hands out. Observed inmate ALI's hands out, loud voice, and advances towards me. Inmate ALI raised his hands. I grabbed both of inmate ALI's arms, Officer DALO restrained inmate ALI from behind. Inmate ALI had his hands around my neck several times. Officer DALO and myself placed inmate ALI against the wall near Cell # 081. Inmate ALI resisted swinging closed fist several times at Officer DALO and myself.
(Ali PTO Exs.: Szabo 8/6/97 Memo to Sheriff.) Officer Dalo's incident memo states: Inmate ALI was previously locked down for twenty three hours at 1605 hour for not wearing inmate identification tag. This writer ordered inmate ALI to lock in. Inmate ALI began saying that this officer was discriminative towards him and re-

fused to lock in because his food was not finished being heated in the microwave. At this time, CORRECTIONAL OFFICER MIKE SZABO responded to the Unit. While escorting inmate ALI back to his cell, inmate ALI bumped Officer SZABO back with his chest. This writer and officer SZABO placed our hands onto inmate ALI's arms to restrain him. Inmate ALI then resisted by attempting to break free. This officer then pulled the emergency body alarm on the portable radio. While restraining inmate ALI, observed the block becoming highly agitated and increasingly loud. Inmate ALI was restrained and placed into empty cell # 075.
(Ali PTO Exs.: Dalo 8/6/97 Memo to Sheriff.)
Obviously, because these documents are unsworn, even if they had been submitted by defendants as part of the summary judgment motion, the Court could not consider them. Fed.R.Civ.P. 56(e); *see also, e.g., Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 391–92 (S.D.N.Y.1998) (Stein, D.J. & Peck, M.J.), & cases cited therein. But even if the Court were to consider the Officers' version of events, fact disputes would still prevent summary judgment for them on the excessive force claim, for the reasons discussed in Point II below.

out his hand and still had pain. (Ali Dep. at 73–75; Ali Rule 56.1 Stmt. ¶ 25.) [4]

## ANALYSIS

■ To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Jackson v. Johnson*, 15 F.Supp.2d 341, 355 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Williams v. Kane*, 95 Civ. 0379, 1997 WL 527677 at *3 (S.D.N.Y. Aug. 25, 1997) (Peck, M.J.). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *accord, e.g., Jackson v. Johnson*, 15 F.Supp.2d at 355–56; *Williams v. Kane*, 1997 WL 527677 at *3; *Ruiz v. Selsky*, 96 Civ.2003, 1997 WL 137448 at *4 (S.D.N.Y. March 24, 1997) (Peck, M.J.); *Morris v. Dann*, No. 95–CV–975, 1996 WL 732559 at *3 (N.D.N.Y. Dec. 11, 1996); *Zamakshari v. Dvoskin*, 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.). Proof that state procedural law was violated does not by itself constitute a deprivation of due process because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990); *accord, e.g., Jackson v. Johnson*, 15 F.Supp.2d at

356; *Williams v. Kane*, 1997 WL 527677 at *3; *Ruiz v. Selsky*, 1997 WL 137448 at *4; *Zamakshari v. Dvoskin*, 899 F.Supp. at 1104.

For a discussion of the applicable standards governing summary judgment motions, *see, e.g., Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P.*, 40 F.Supp.2d 183, 188–89 (S.D.N.Y.1999) (Stein, D.J. & Peck, M.J.); *Salahuddin v. Coughlin*, 999 F.Supp. 526, 534–35 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.); *Ruiz v. Selsky*, 1997 WL 137448 at *3, and the cases cited in those opinions.

## I. STANDARDS FOR § 1983 EXCESSIVE FORCE CLAIMS BROUGHT BY PRETRIAL DETAINEES ARE GOVERNED BY DUE PROCESS, NOT EIGHTH AMENDMENT, STANDARDS

Ali asserts that Officers Szabo and Dalo used excessive force on him. There is no dispute that Officers Szabo and Dalo acted under color of state law. Defendants treat . Ali's claim as alleging a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. (Defs.Br. at 8–13.) Ali, however, was a pretrial detainee rather than a convicted inmate.[5]

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court stated that "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394, 109 S.Ct. at 1870. An excessive force claim can arise under the Fourth, Eighth or Fourteenth Amend-

---

**4.** Ali had injured his back three times prior to August 6, 1997, and had previously been given Ibuprofen at Putnam for lower back pain. (Ali Dep. at 34–43; Seymour Aff.Ex. C: Putnam Progress Notes: Ali complained of back pain on 7/18/97, 7/24/97 for which he received Ibuprofen; 6/11/97, 7/18/97, 7/24/97 Ali Request for Medical Treatment for back pain; 8/7/97 Putnam Hosp. Ctr. Emergency Room Report.) Ali had also previously twice injured his right hand in a knife fight and by punching a wall.

(Defs.Rule 56.1 Stmt. ¶ 25; Ali Dep. at 77–80.)

**5.** The Court assumes that Ali had been arraigned by the time the alleged excessive force incident occurred on August 6, 1997, since Ali was arrested on May 9, 1997 and was housed at Putnam starting on June 10, 1997, a full month after his arrest. (*See* Defs.Rule 56.1 Stmt. ¶¶ 1–5; Ali Dep. at 6, 34.)

ments. *See id.* at 394, 395 & n. 10, 109 S.Ct. at 1871 & n. 10.

The Supreme Court has expressly stated that the Eighth Amendment applies to post-conviction prisoners.[6] *See Graham v. Connor,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' ") (citing *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)); *see also, e.g., Brown v. Doe,* 2 F.3d 1236, 1242 n. 1 (2d Cir.1993), *cert. denied,* 510 U.S. 1125, 114 S.Ct. 1088, 127 L.Ed.2d 403 (1994); *Covino v. Vermont Dep't of Corrections,* 933 F.2d 128, 129 (2d Cir.1991); *Malloy v. DeFrank,* 95 Civ. 9122, 1996 WL 631725 at *3 (S.D.N.Y. Oct. 31, 1996) (Peck, M.J.).

■ The Fourth Amendment applies to pre-arraignment excessive force claims arising out of a search or seizure, neither of which Ali claims occurred in this instance. *See, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998) (Fourth Amendment is not applicable where excessive force claim arose during a police chase, not during an actual search or seizure); *Tierney v. Davidson,* 133 F.3d 189, 199 (2d Cir.1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these [excessive force] claims fall outside the Fourth Amendment protections applied in *Graham v. Connor* ..., and are governed instead by the Due Process Clause of the Fourteenth Amendment."); *Blake v. Base,* No. 90–CV–0008, 1998 WL 642621 at *10–11 & n. 21–22 (N.D.N.Y. Sept. 14, 1998) (distinguishing between a Fourth Amendment excessive force claim brought by a post-arrest detainee pre-arraignment before he had been formerly charged, and a claim brought by a post-arraignment pretrial detainee).

■ Because Ali's claim arose while he was a post-arraignment, pre-conviction pretrial detainee, and since neither the Eighth nor the Fourth Amendment covers his claim, it is properly analyzed under the Fourteenth Amendment substantive due process standard. *See, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. at 1714–15 (substantive due process analysis is the applicable standard where a constitutional claim relating to physically abusive government conduct does not arise under either the Fourth or Eighth Amendments); *Graham v. Connor,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 ("It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment"); *Brown v. Doe,* 2 F.3d at 1242 & n. 1 (prisoner "properly invokes the Due Process Clause as the source of constitutional protection against the violence inflicted on him" when he was "brutally beaten by law enforcement officials during his detention at [a state] [j]ail"); *Covino v. Vermont Dep't of Corrections,* 933 F.2d at 129 ("the district court correctly observed that as a pre-trial detainee, [plaintiff's] claims were governed by the due process clause, rather than the eighth amendment"); *Rivera v. New York,* 96 Civ. 7697, 1999 WL 13240 at *10 (S.D.N.Y. Jan. 12, 1999); *Santiago v. Semenza,* 965 F.Supp. 468, 471 (S.D.N.Y.1997); *Cuoco v. Hershberger,* 93 Civ. 2806, 1996 WL 648963 at *4–5 (S.D.N.Y. Nov. 6, 1996); *Pristell v. County of Sullivan,* 91 Civ. 6317, 1996 WL 11210 at *4–5 (S.D.N.Y. Jan. 10, 1996); *Rahman v. Philip,* 92 Civ. 5349, 1995 WL 679251 at *4 (S.D.N.Y. Nov. 15, 1995), *aff'd mem.,* 104 F.3d 356 (2d Cir.1996), *cert. denied,* 520 U.S. 1267, 117 S.Ct. 2438, 138 L.Ed.2d 198 (1997).

■ In order to state a claim for excessive force under the Fourteenth Amendment, the governmental act complained of must be such an abuse of power as to shock the conscience in a constitutional

---

**6.** The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor exces-

sive fines imposed, nor cruel and unusual punishments inflicted."

sense. *See, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. at 1717 ("for a half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience") (citing, *inter alia, Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, C.J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *Rivera v. New York,* 1999 WL 13240 at *10; *Santiago v. Semenza,* 965 F.Supp. at 471; *Cuoco v. Hershberger,* 1996 WL 648963 at *5; *Mathie v. Fries,* 935 F.Supp. 1284, 1299 (E.D.N.Y.1996), *aff'd,* 121 F.3d 808 (2d Cir. 1997).

The Supreme Court has explained that the "conscience shocking" standard is higher than that of common law negligence: "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. at 1718. Since the "[r]ules of due process are not ... subject to mechanical application," the concept of "conscience shocking," varies according to the different environments in which the alleged excessive force occurs. *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. at 1718–19.

In *Johnson v. Glick,* 481 F.2d at 1033, which involved facts remarkably similar to this case (the prisoner alleged excessive force when a corrections officer attacked him for talking back), Judge Friendly applied the conscience shocking standard later reiterated by the Supreme Court in *County of Sacramento v. Lewis,* and articulated four factors a court should consider in determining whether a prison officer's conduct violated a pretrial detainee's substantive due process rights:

> In determining whether the constitutional line has been crossed, a court must look to such factors as [A] the need for the application of force, [B] the relationship between the need and the amount of force that was used, [C] the extent of injury inflicted, and [D] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick,* 481 F.2d at 1033; *accord, e.g., Tierney v. Davidson,* 133 F.3d at 199; *Rivera v. New York,* 1999 WL 13240 at *10; *Santiago v. Semenza,* 965 F.Supp. at 471; *Cuoco v. Hershberger,* 1996 WL 648963 at *5; *Pristell v. County of Sullivan,* 1996 WL 11210 at *5; *Rahman v. Philip,* 1995 WL 679251 at *4.

Judge Friendly's *Johnson v. Glick* factors are quite similar to the standards set out by the Supreme Court for Eighth Amendment analysis of excessive force claims by convicted prisoners. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (To determine whether a prison official's use of force was unconstitutionally excessive, the Court should "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response,'" as well as "the extent of injury suffered by an inmate."); *Graham v. Connor,* 490 U.S. at 396–97 & n. 11, 109 S.Ct. at 1872–73 & n. 11 ("We also suggested [in *Whitley* ] that the ... prongs of the *Johnson v. Glick* test might be useful in analyzing excessive force claims brought under the Eighth Amendment ... because its four factors help to focus the central inquiry in the Eighth Amendment context, which is whether the particular use of force amounts to the 'unnecessary and wanton infliction of pain.'"); *Whitley v. Albers,* 475 U.S. at 321, 106 S.Ct. at 1085; *Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994); *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993); *Malloy v. DeFrank,* 1996 WL 631725 at *4.[7]

---

7. The Supreme Court has determined that a "significant injury" is not required for there to be an Eighth Amendment excessive force violation. *Hudson v. McMillian,* 503 U.S.

The parallel between the Due Process Clause excessive force standard applicable to pretrial detainees, and the Eighth Amendment standard applicable to convicted prisoners is not surprising. As Judge Friendly remarked, "it would be absurd to hold that a pre-trial detainee has less constitutional protection against acts of prison guards than one who has been convicted." *Johnson v. Glick*, 481 F.2d at 1032.

Finally, Judge Friendly made clear that while the "shocks the conscience" test "is not one that can be applied by a computer, it at least points the way." *Id.* at 1033. He explained:

> Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it.... Although "the least touching of another in anger is a battery," ... it is not a violation of a constitutional right actionable under 42 U.S.C. § 1983. The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. *Not every push or shove, even if it later may seem unnecessary in the*

*peace of a judge's chambers, violates a prisoner's constitutional rights.*

*Johnson v. Glick*, 481 F.2d at 1033 (emphasis added); *accord, e.g., Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. at 1872 (quoting with approval Judge Friendly's "not every push or shove" language); *Lennon v. Miller*, 66 F.3d 416, 425–26 (2d Cir.1995) (quoting *Graham's* quoting of Judge Friendly); *Romano v. Howarth*, 998 F.2d at 105 (quoting Judge Friendly); *Malloy v. DeFrank*, 1996 WL 631725 at *4 (quoting Judge Friendly).

## II. OFFICERS SZABO AND DALO SHOULD BE DENIED SUMMARY JUDGMENT ON ALI'S EXCESSIVE FORCE CLAIM BECAUSE THERE IS A MATERIAL ISSUE OF FACT AS TO WHETHER THEY USED EXCESSIVE FORCE

Ali claims that he was obeying orders and walking back to his cell when Officers Szabo and Dalo used excessive force in throwing him up against the wall and slamming his right hand twice against the wall, causing painful bruising and swelling, making it impossible for him to fully open or close his hand, injuring his back, and causing continuing pain. (Ali Br. at 6–8, 13.) Ali further claims that Officers Szabo and Dalo acted maliciously and sadistically to cause him harm. (Ali Br. at 6, 9.)[8] The Court applies Judge

---

at 7, 112 S.Ct. at 999. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id.* "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.; accord, e.g., Malloy v. DeFrank*, 1996 WL 631725 at *4.

On the other hand, the Supreme Court also has made clear that de minimis use of physical force does not constitute an Eighth Amendment violation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth

Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a short " 'repugnant to the conscience of mankind.' "

*Hudson v. McMillian*, 503 U.S. at 9–10, 112 S.Ct. at 1000 (citations omitted & emphasis added); *accord, e.g., Malloy v. DeFrank*, 1996 WL 631725 at *4.

8. Officers Szabo and Dalo state in their brief that Ali "conceded that force was only used as a direct result of his refusal to return to his cell." (Defs.Br. at 12.) The defendants, however, do not offer a single citation to the record in support of this highly questionable proposition; the Court, which has read the entire Ali deposition transcript,

Friendly's *Johnson v. Glick* factors set out in Point I above to the August 6, 1997 incident:

### A. *Need for the Application of Force*

Officers Szabo and Dalo argue in their brief that Ali refused to obey their order to return to his cell, and that they used appropriate force to maintain or restore discipline. (Defs.Br. at 10–12.) Neither officer, however, provided an affidavit or any other admissible evidence to support their position. Further, Ali's statement that he was walking back to his cell and obeying the order flatly contradicts the officers' unsworn rendition of the incident. (Ali Rule 56.1 Stmt. ¶¶ 12, 16; Ali Dep. at 65.) On summary judgment the Court must construe the facts in favor of the non-movant, here Ali, and thus the Court assumes for purposes of this motion that Ali was obeying the order to return to his cell when the incident occurred. It is therefore unclear whether there was any need for the application of force, and whether Officers Szabo and Dalo "attacked" and "slammed" Ali sadistically and without provocation. These disputed, unresolved factual issues should be left for the jury as finder of fact to determine. *See, e.g., Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988) (denying summary judgment where "a jury could find for [plaintiff prisoner] if it believed [the prisoner's] allegations that [defendant officer] started an argument with him ... and then struck [the prisoner] without justification. The jury could also find for [the prisoner] even if he had refused to obey [the officer's] order to leave if [the officer] had used gratuitous or excessive force against [the prisoner]"); *Martinez v. Rosado,* 614 F.2d 829, 831 (2d Cir.1980) (denying summary judgment where plaintiff prisoner admitted to " 'refusing to obey a direct order' " and a "violation involving "keys," " but the prisoner asserted that he suffered a "vi-

cious attack [by officers] ... without sufficient provocation." "We certainly cannot conclude that these violations alone would justify a physical assault absent some evidence of physical resistance or some other indication that the degree of force utilized by the officer was proper under the circumstances."); *Mitchell v. Keane,* 974 F.Supp. 332, 340–41 (S.D.N.Y.1997) (denying summary judgment where prisoner alleged officers twisted his shackles for no reason causing bruising and back pain), *aff'd,* 175 F.3d 1008, 1999 WL 159896 (2d Cir. March 17, 1999); *Messina v. Mazzeo,* 854 F.Supp. 116, 133 (E.D.N.Y.1994) (denying summary judgment where officers did not submit affidavits detailing the facts of the arrest and prisoner alleged that force was used and some injury was sustained; "Moreover, ... a review of the case law in this circuit reveals that, as a general rule, the issue of whether excessive force was used is for the jury to decide, even though the amount of force used and the extent of injury asserted may be minimal."); *Ortiz v. Cornacchia,* 88 Civ. 5988, 1990 WL 103982 at *2 (S.D.N.Y. July 16, 1990) (denying summary judgment where prisoner claimed he was assaulted without justification and officers contended that their actions were prompted by prisoner's failure to follow directions not to turn around in the elevator; while evidence did show that inmate was arguing with the officers, "[a]lthough such conduct may possibly have violated some rule of order in the prison, [the officers] have not offered this as a justification for their actions. Therefore, there is a material issue of fact as to whether the physical force was reasonably used in an effort to maintain order.").

### B. *The Relationship Between the Need and the Amount of Force Used*

Defendants argue that, in a good faith effort to maintain and restore discipline,

has not found any evidence that Ali made such a concession. (*See also* Ali Br. at 11, denying defendants' assertion.)

The Court further notes that Ali's claim that Officer Szabo acted maliciously is not

merely conclusory, since he points to circumstantial evidence of officer Szabo's bias to Muslim inmates. (*See* Ali Br. at 5–7, citing PTO Exs.)

the officers used minimal force, used no weapons, never punched or kicked Ali, and that the incident lasted just a couple of seconds. (Defs.Br. at 11–12.) This argument fails to account for Ali's claim that Officers Szabo and Dalo slammed Ali's body and then his hand up against the wall as Ali was obeying instructions to return to his cell. (Ali Dep. at 62–63.) As stated in Point II.A above, because there is a material issue of fact as to whether any force was needed, the Court cannot determine whether the force allegedly used, *i.e.*, pushing Ali up against the wall and slamming his hand, reasonably correlates to the need for the application of force. *See, e.g., Moore v. Ortiz*, 93 Civ. 2626, 1998 WL 226195 at *2 (S.D.N.Y. May 4, 1998) (denying summary judgment on excessive force claim because, *inter alia*, there was a material factual dispute as to whether the force defendants used was de minimis and whether inmate was obeying orders or "lunged" at officers "in a threatening manner"); *McCrory v. Brown*, 95 Civ. 4913, 1998 WL 54636 at *2 (S.D.N.Y. Feb. 9, 1998) (denying summary judgment where officer punched prisoner in the face because there was a "question of fact whether [officer] hit [inmate] sadistically and without provocation, or plaintiff lunged at [the officer] who reacted in self-defense or an attempt to restore order"); *Smith v. Marcellus*, 917 F.Supp. 168, 174 (W.D.N.Y. 1995) ("Whether the proof will establish that this type and amount of force reasonably correlates to the need for application of force, and the weight to be accorded this factor . . ., are issues best left for the trier of fact.").

## C. *The Extent of Ali's Injuries*

Officers Szabo and Dalo point out that Ali did not suffer any serious injury. (Defs.Br. at 12.) There is medical evidence, however, that Ali complained of pain and numbness in his hands and back for weeks after the incident; still had swelling of his hand and a strained back two months after the incident; and still had pain in March 1999 at the time of his deposition. (Ali Dep. at 73–75, 77, 81–82, 84; Seymour Aff.Ex. C: 8/25/97 Ryan Memo; 9/30/97 Ryan Memo; 8/20/97 Ali Medical Treatment Request; 9/30/97 Ali Medical Treatment Request; 11/25/97 Dr. Rothman Report.)

Moreover, as defendants acknowledge (Defs.Br. at 12), the injury suffered by Ali is not determinative. Given the nature and duration of Ali's injuries and the lack of evidence that they were inflicted in good faith, the Court cannot conclude that Ali's injuries represent such a de minimis use of force that defendants would be entitled to summary judgment. *See, e.g., Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir.1988) (denying summary judgment where defendants argued that prisoner's injuries were de minimis, because "the [district] court's belief that the dispute as to 'fault' was immaterial was wrong. The circumstances of the incident and assessment of fault bore directly on the issue of whether the force used was excessive"); *Moore v. Ortiz*, 93 Civ. 2626, 1998 WL 226195 at *2 (S.D.N.Y. May 4, 1998) (denying summary judgment because, *inter alia*, there was a material factual dispute as to whether prisoner's injuries were de minimis); *McCrory v. Brown*, 95 Civ. 4913, 1998 WL 54636 at *2 (S.D.N.Y. Feb. 9, 1998) (denying summary judgment where officer punched prisoner in the face, even though "nurse's report states that there was no edema or redness on plaintiff's face"); *Johnson v. Coughlin*, No. 94–CV–257, 1997 WL 250060 at *3 (W.D.N.Y. April 2, 1997) ("[D]efendants assert that plaintiff's medical records fail to establish physical injury of a constitutional dimension. Under the caselaw . . ., although lack of proof of serious physical injury is relevant to the eighth amendment inquiry, it does not end it. Therefore, even if the court should find that there is no genuine issue of material fact as to the extent or seriousness of plaintiff's injury, there is nothing in the record to provide a basis for evaluation of the remaining *Whitley* factors."); *Lloyde v. Lord*, 94 Civ. 484, 1997 WL 123996 at *3

(S.D.N.Y. March 19, 1997) (denying summary judgment on excessive force claim during an attempted prison escape where "plaintiff stated at deposition that [defendant] was on top of her for twenty minutes. Plaintiff has also alleged that [defendant] threatened to break her neck if she moved. Plaintiff has further alleged that [defendant] dragged her face along the cement ground. In the days and weeks after the incident, medical records indicate that the plaintiff experienced some swelling, albeit minimal, of her right shoulder and left knee. Given the alleged duration and nature of [defendant's] physical contact with plaintiff, I cannot conclude that it represents a de minimis use of force from which plaintiff is not protected by the Eighth Amendment.") (record citations omitted); *Smith v. Marcellus,* 917 F.Supp. 168, 173 (W.D.N.Y.1995) (denying summary judgment where "[d]efendant does not forcefully argue that the injuries suffered by plaintiff were de minimis, and the medical records provide a reasonable basis for a jury to conclude that some injury occurred as a result of the incident"); *Messina v. Mazzeo,* 854 F.Supp. 116, 133 (E.D.N.Y.1994) ("[E]ven if accepted as accurate and unbiased, the [medical] records which indicate no serious injury could not alone support a motion for summary judgment.").

### D. *Whether Force Was Applied in Good Faith or Maliciously and Sadistically*

The core of the substantive due process analysis in this case is " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1720, 140 L.Ed.2d 1043 (1998) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). Whether Officers Szabo and Dalo intended to "maliciously and sadistically" cause harm to Ali is a factual inquiry into the officers' subjective mental state. *See, e.g., Hemphill v. Schott,* 141 F.3d 412, 419 (2d Cir.1998); *Rahman v. Philip,* 92 Civ. 5349, 1995 WL 679251 at *5 (S.D.N.Y. Nov. 15, 1995), *aff'd mem.,* 104 F.3d 356 (2d Cir. 1996), *cert. denied,* 520 U.S. 1267, 117 S.Ct. 2438, 138 L.Ed.2d 198 (1997).

Ali alleges that Officers Szabo and Dalo acted maliciously and sadistically, and that there was no need to maintain order or discipline because Ali was complying with their orders and walking back to his cell. (Ali Br. at 7, 14; Ali Rule 56.1 Stmt. ¶ 14.) Officers Szabo and Dalo have not submitted any personal statements to the contrary. It will be up to the jury to determine whether Officers Szabo and Dalo acted with malicious and sadistic intent or with the good faith effort to maintain or restore discipline. *See, e.g., Hemphill v. Schott,* 141 F.3d at 419 (denying summary judgment on Fourteenth Amendment excessive force claim where officers' allowed civilian to accompany officers to plaintiff's arrest and gave civilian a gun with which civilian shot plaintiff, because the officers' "intentions create a factual dispute that makes summary judgment inappropriate"); *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988) (denying summary judgment where "[t]he jury could ... find for [plaintiff] even if he had refused to obey [officer's] order to leave if [officer] had used gratuitous or excessive force against [plaintiff]"); *Martinez v. Rosado,* 614 F.2d 829, 831 (2d Cir.1980) (denying summary judgment where plaintiff described a beating by corrections officers as " 'intentional, malicious, and for the sole purpose of causing harm to the plaintiff,' " because even though "these statements do have a conclusory tone, when combined with [plaintiff's] specific allegations of verbal taunts and abuses, attempts to provide plaintiff, and a threat to beat him before the beating occurred[,] allegations not disputed in [the officer's] affidavit[,] they are sufficient to require a trial here"); *Ortiz v. Cornacchia,* 88 Civ. 5988, 1990 WL 103982 at *2 (S.D.N.Y. July 16, 1990) (denying summary judgment on excessive force claim where corrections officers

"have not offered ... a justification for their actions. Therefore, there is a material issue of fact as to whether the physical force was reasonably used in an effort to maintain order."); *Jones v. Reid,* 85 Civ. 4515, 1989 WL 83562 at *6 (S.D.N.Y. July 20, 1989) (denying summary judgment on prisoner's excessive force claim where prisoner alleged that corrections officer acted with malice in closing cell door on prisoner's arm, and corrections officer alleged that he released prisoner's arm when he learned it had been caught in the door and acted without malice).

\* \* \* \* \* \*

After considering the four factors that Judge Friendly set forth in *Johnson v. Glick,* the Court finds that there are material issues of fact as to whether Officers Szabo and Dalo's use of force was unconstitutionally excessive. The Court therefore recommends that Officers Szabo and Dalo be denied summary judgment on Ali's excessive force claim.

### III. *OFFICERS SZABO AND DALO ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON ALI'S EXCESSIVE FORCE CLAIM, BECAUSE MATERIAL ISSUES OF FACT EXIST AS TO WHETHER THEIR CONDUCT WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES*

■ The Second Circuit has summarized the qualified immunity doctrine, as follows:

> Qualified immunity provides vital protection for government officials with discretionary responsibilities. The purpose of the qualified immunity doctrine is to balance the need to protect the rights of citizens through damage remedies, with the opposing need to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978); *Harlow v. Fitzger-*

*ald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The Supreme Court in *Butz* expressed its expectation "that damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." *Butz,* 438 U.S. at 508, 98 S.Ct. at 2911–12. As Judge Learned Hand stated, "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949) [*cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950) ].

> The doctrine of qualified immunity protects government officials from liability for civil damages if the challenged action "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). A right is considered to be "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson [v. Creighton],* 483 U.S. [635,] 640, 107 S.Ct. [3034,] 3039, 97 L.Ed.2d 523 [ (1987) ].

*Danahy v. Buscaglia,* 134 F.3d 1185, 1189–90 (2d Cir.1998); *accord, e.g., Shechter v. Comptroller of New York,* 79 F.3d 265, 268–71 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 475–76 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621, 623–24 (2d Cir.1993); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992); *Francis v. Coughlin,* 891 F.2d 43, 45–46 (2d Cir.1989); *Salahuddin v. Coughlin,* 999 F.Supp. 526, 536–37 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.).

The right is considered "clearly established" if it is established by "the decisional law of the Supreme Court or the appropriate circuit court"—here, obviously, the Second Circuit. *Francis v. Coughlin,* 891 F.2d at 46; *accord, e.g., Shechter v. Comptroller,* 79 F.3d at 271; *Rodriguez v. Phillips,* 66 F.3d at 476; *Salahuddin v. Coughlin,* 999 F.Supp. at 537.

Defendants here do not dispute that at the time of the incident in question, the Supreme Court had determined that unnecessary and wanton infliction of pain through the use of excessive force constituted a violation of the Fourteenth Amendment. (Defs.Br. at 13.) *See* cases cited at pages 9–15 above.

Defendants argue, however, that since Ali "continued to refuse to return to his cell, the officers believed they were entitled, to ... use reasonable force to carry out said order. Their action was objectively reasonable in all respects and necessary in order to maintain discipline." (Defs.Br. at 13–14.) Conversely, Ali argues that he did not refuse to return to his cell, he told the officers that he was on the way back to lock-in, and in fact was walking back toward his cell when they attacked him. (*E.g.,* Ali Rule 56.1 Stmt. ¶¶ 12, 16; Ali Dep. at 65.) The Court cannot conclude as a matter of law that Officers Szabo and Dalo's conduct was objectively reasonable since there are material issues of fact as to whether Ali was obeying the officers' order and who started the physical confrontation. The Court therefore recommends that Officers Szabo and Dalo be denied summary judgment on their qualified immunity defense, leaving the factual issues underlying the immunity claim for resolution at trial. *See, e.g., Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999) ("[Plaintiff] and the officers disputed material facts that implicate the reasonableness of the officers' use of force.... Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded."); *Kaminsky v. Rosenblum,* 929 F.2d 922, 927 (2d Cir.1991) (The District Judge "correctly decided that he could not determine whether it was objectively reasonable for [officers] to believe their acts were lawful, because the facts in dispute were relevant to that determination."); *Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989) ("The right of an individual not to be subjected to excessive force has long been clearly established. Thus, the question here was whether it was objectively reasonable for [officer] to believe that his treatment of [arrestee] did not violate that right. This was a matter as to which the facts were not undisputed, and hence it was a question to be answered by a properly instructed jury."); *Moore v. Ortiz,* 93 Civ. 2626, 1998 WL 226195 at *4 (S.D.N.Y. May 4, 1998) ("The defendants are not entitled to qualified immunity [at summary judgment stage]. The prohibition against the use of excessive or unauthorized force is a clearly established constitutional right.... [W]hether the defendants' behavior was 'objectively reasonable' presents a material factual dispute that cannot be resolved on summary judgment."); *Singleton v. City of Newburgh,* 1 F.Supp.2d 306, 313 (S.D.N.Y.1998) ("[T]o prevail on a motion for summary judgment [on qualified immunity grounds] in an excessive use of force case, the evidence must show that 'no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice.'"); *Rossi v. New York City Police Dep't,* 94 Civ. 5113, 1998 WL 65999 at *7 (S.D.N.Y. Feb. 17, 1998) (denying summary judgment on qualified immunity "for the reasons this Court denied the motion for summary judgment on the excessive force claim, the Court finds that material factual disputes exist on the issue of qualified immunity and whether [officer's] actions were objectively reasonable under the circumstances"); *McCrory*

*v. Brown,* 95 Civ. 4913, 1998 WL 54636 at *2 (S.D.N.Y. Feb. 9, 1998) ("it is impossible to determine whether [the officer] reasonably believed his actions were lawful [so as to entitle him to qualified immunity] because the facts relevant to that determination are in dispute"); *Johnson v. Coughlin,* No. 94–CV–257H, 1997 WL 250060 at *3–4 (W.D.N.Y. April 2, 1997) (no summary judgment as to qualified immunity where there are fact disputes re use of excessive force); *Lloyde v. Lord,* 94 Civ. 484, 1997 WL 123996 at *3 (S.D.N.Y. March 19, 1997) ("because [the Court has] determined that plaintiff has alleged sufficient facts to support a viable claim of excessive force, [the Court] cannot conclude as a matter of law that [officers'] conduct was objectively reasonable. [The Court] therefore find[s] that [officers] are not entitled to qualified immunity" at summary judgment stage).

Officers Szabo and Dalo are not entitled to summary judgment based on qualified immunity on Ali's excessive force claim because of material issues of fact as to what occurred on August 6, 1997.

## IV. *THE SHERIFF SHOULD BE GRANTED SUMMARY JUDGMENT ON ALI'S EXCESSIVE FORCE CLAIM BECAUSE ALI HAS NOT SHOWN PERSONAL INVOLVEMENT BY THE SHERIFF*

■ "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a pre-requisite to an award of damages under § 1983.' "[9] *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *accord, e.g., Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Jackson v. Johnson,* 15 F.Supp.2d 341, 365 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.); *Wright v. Nunez,* 950 F.Supp. 610, 611 (S.D.N.Y. 1997) (Martin, D.J. & Peck, M.J.); *McCray v. Kralik,* 96 Civ. 3891, 1996 WL 378273 at *3 (S.D.N.Y. July 1, 1996) (Peck, M.J.); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions.").

■ "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [citizens] by

9. In addition to monetary damages, Ali seeks a "temporary restraining order not to go back" to Putnam. (Am.Cplt.¶ V.) Since Ali is now incarcerated at the Otisville Correctional Facility and is no longer at Putnam (Ali Dep. at 6, 34; Cplt. ¶ II), and has not shown that there is any likelihood that he will be transferred back there, the Court need not reach Ali's request for prospective preliminary injunctive relief. *See, e.g., Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991) ("a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction"); *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990); *Stevenson v. State & Local Police Agencies,* 42 F.Supp.2d 229, 233–34 (W.D.N.Y.1999); *Distribution Sys. of Am., Inc. v. Village of Old Westbury,* 785 F.Supp. 347, 352 (E.D.N.Y.1992); *Costello v. McEnery,* 767 F.Supp. 72, 76 (S.D.N.Y.), *aff'd,* 948 F.2d 1278 (2d Cir.1991), *cert. denied,* 504 U.S. 980, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992).

failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d at 873; *accord, e.g., Wright v. Smith,* 21 F.3d at 501; *Jackson v. Johnson,* 15 F.Supp.2d at 365; *Watson v. McGinnis,* 964 F.Supp. at 130; *Wright v. Nunez,* 950 F.Supp. at 611; *Lloyde v. Lord,* 94 Civ. 484, 1997 WL 123996 at *1 (S.D.N.Y. March 19, 1997); *McCray v. Kralik,* 1996 WL 378273 at *3; *Zamakshari v. Dvoskin,* 899 F.Supp. at 1109.

██ Ali alleges that "the Sheriff should have known [of the violation] by closely supervising the work of his subordinates" and that the Sheriff neglected to "ascertain[ ] the facts of the altercation" between Ali, Szabo and Dalo. (Ali Br. at 20, 22–25.) Ali does not claim in either his complaint, his deposition testimony or his summary judgment papers that the Sheriff had any personal involvement in or knowledge of the incident, nor does he allege that the Sheriff had any duty to "ascertain[ ] the facts of the altercation," or was grossly negligent in supervising the officers. (*See* Am.Cplt. ¶ IV; *see also* Ali Br. at 2–14; Ali Rule 56.1 Stmt. ¶¶ 10–19; Ali Dep. at 50–66.)

Because Ali does not claim that the Sheriff had any personal involvement in Officers Szabo and Dalo's alleged use of excessive force, or that the Sheriff supervised subordinates in a grossly negligent manner, the Sheriff is entitled to summary judgment dismissing Ali's excessive force claim. *See, e.g., Baskerville v. Goord,* 97 Civ. 6413, 1998 WL 778396 at *6 (S.D.N.Y. Nov. 5, 1998) (summary judgment on excessive force claim where defendants were not "present during or had any personal involvement with the alleged assault"); *Harvey v. New York City Police Dep't,* 93 Civ. 7563, 1997 WL 292112 at *1 (S.D.N.Y. June 3, 1997) ("plaintiff's ... claims of excessive force ... must be dismissed as to individual defendants ..., because plaintiff has adduced no evidence that any of them were personally involved in any use of force against him"); *Pravda v. City of Albany,* 956 F.Supp. 174, 182 (N.D.N.Y. 1997) (summary judgment for supervisory officers because "Plaintiff does not allege any facts from which the Court could reasonably infer that Defendants participated in this alleged mistreatment, were present when it allegedly occurred, knew about it, or were grossly negligent in any way"); *Show v. Patterson,* 955 F.Supp. 182, 188 (S.D.N.Y.1997) (summary judgment for defendants on excessive force claim where plaintiffs failed to submit evidence "indicat[ing] any personal involvement by either of these defendants in the acts alleged in plaintiffs' complaints. Similarly, plaintiffs do not allege any facts indicating that [defendants] created or were aware of a prison policy of violating prisoners' rights by ... using excessive force. Finally, the complaints are devoid of any allegations or implications that [defendants] supervised subordinates in a grossly negligent manner"); *Wright v. Naranjo,* No. 94–CV–2461, 1996 WL 449276 at *4 (E.D.N.Y. Aug. 1, 1996) (dismissing excessive force claim because plaintiff "fails to allege that [defendant] was personally involved in the use of force against him").

Because there is no evidence that the Sheriff was involved in Officer Szabo and Dalo's alleged use of excessive force on Ali, the Sheriff should be granted summary judgment on Ali's excessive force claim.

## V. ALL DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON ALI'S DENIAL OF MEDICAL TREATMENT CLAIM BECAUSE ALI FAILED TO SHOW PERSONAL INVOLVEMENT BY DEFENDANTS

██ Ali's second claim is for failure to provide him with medical treatment. (Am. Cplt.¶ IV(3).) Because Ali's alleged deprivation of medical treatment arose when he was a pretrial detainee, his claim is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See, e.g., City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77

L.Ed.2d 605 (1983); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996); *Grant v. New York City Dep't of Corrections,* 104 F.3d 355, 1996 WL 734052 at *1 (2d Cir. Dec. 23, 1996)(table); *Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979)); *Smith v. Montefiore Med. Center–Health,* 22 F.Supp.2d 275, 280 (S.D.N.Y.1998); *Santiago v. James,* 95 Civ. 1136, 1998 WL 474089 at *6 (S.D.N.Y. Aug. 11, 1998); *McFadden v. Solfaro,* 95 Civ. 1148 & 3790, 1998 WL 199923 at *4 (S.D.N.Y. April 23, 1998); *Hamilton v. Broomfield,* 95 Civ. 3241, 1998 WL 17697 at *3 & n. 2 (S.D.N.Y. Jan.20, 1998); *Bailey v. Tricolla,* No. CV–94–4597, 1996 WL 733078 at *3 (E.D.N.Y. Dec. 11, 1996); *Irrizarry v. Kenny,* 92 Civ. 1511, 1995 WL 678747 at *4 (S.D.N.Y. Nov.14, 1995); *Owens v. Colburn,* 860 F.Supp. 966, 973–75 (N.D.N.Y.1994), *aff'd mem.,* 60 F.3d 812 (2d Cir.1995).

■ "[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner.... Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst,* 101 F.3d at 856; *see also, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998); *Grant v. New York City Dep't of Corrections,* 104 F.3d 355, 1996 WL 734052 at *1; *Wicks v. Qualtere,* Nos. 95–CV–425 & 426, 1997 WL 176338 at *3 (N.D.N.Y. April 4, 1997) (Pooler, D.J.); *Landy v. Irizarry,* 884 F.Supp. 788, 801 n. 20 (S.D.N.Y.1995). Deliberate indifference may be shown

by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. Thus, in order to establish deliberate indifference, a plaintiff must show "something more than mere negligence"; but proof of intent is not required, for the deliberate-indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Weyant v. Okst,* 101 F.3d at 856 (quotations & citations omitted); *see also, e.g., Bryant v. Maffucci,* 923 F.2d at 983; *Hamilton v. Broomfield,* 1998 WL 17697 at *3; *Wicks v. Qualtere,* 1997 WL 176338 at *3; *Montalvo v. Jennings,* 93 Civ. 8351, 1996 WL 148483 at *4 (S.D.N.Y. April 1, 1996).

■ Ali claims that he was denied medical treatment when he asked for it without filling out the required medical request form, and that he was denied therapy for his hand and stronger pain medication for his back. (Ali Dep. at 80, 82–83; Ali Rule 56.1 Stmt. ¶ 24; *see* Ali Br. at 15; Cplt. ¶ 3.) Although Ali states that "[i]t is inconceivable that medical staff for instance who is responsible for giving out controlled medicine daily can abruptly cease this procedure for days and the Sheriff not be notified of it" (Ali Br. at 24), Ali offers no evidence that the Sheriff had notice of his alleged medical treatment denials. Further, Ali fails to allege in his complaint who denied him medical treatment, and submits no evidence that Officers Szabo and Dalo or the Sheriff were personally involved in the alleged denial. Accordingly, since there is no evidence that defendants were personally involved in Ali's alleged denial of medical treatment, defendants should be granted summary judgment on this claim. *See, e.g., Yant v. Scholack,* 95 Civ. 9462, 1998 WL 157053 at *7 (S.D.N.Y. April 3, 1998) (summary judgment for defendants because "plaintiff has not alleged, and the evidence fails to demonstrate, that any of the named

defendants had any personal involvement in, or responsibility for, plaintiff's failure to receive [medical treatment]. In order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant."); *Hamilton v. Broomfield*, 1998 WL 17697 at *3 (dismissing plaintiff's denial of medical treatment claim because, *inter alia*, "plaintiff [does not] allege that the officers were aware that 'a substantial risk of serious harm' existed"); *Wicks v. Qualtere*, 1997 WL 176338 at *3 (plaintiff's claim that the Chief Administrative Officer, "violated his rights by refusing to allow [plaintiff] to go to the hospital ... fails because [plaintiff] does not allege that [defendant] had any personal involvement in the medical decisions made following his fall. Respondeat superior liability does not lie against supervisors in section 1983 actions."); *Landy v. Irizarry*, 884 F.Supp. at 801–02 ("Neither in his Complaint, 3(g) Statement, nor in his deposition does Plaintiff mention Defendants ... as being involved in any denial of medical treatment. His only specific reference to any individual concerning a denial of medical treatment is to [someone], who has never been served with the Complaint in this action. Because Plaintiff fails to allege or offer specific facts linking either Defendant [police officers] to his requests and alleged denial of medical treatment, Defendants are entitled to summary judgment on this issue.").

The Court therefore should grant all defendants summary judgment on Ali's denial of medical treatment claim.

## VI. *ALL DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON ALI'S GENERAL RETALIATION CLAIM BECAUSE ALI HAS NOT SHOWN PERSONAL INVOLVEMENT BY DEFENDANTS*

 A plaintiff's burden of proof in stating a retaliation claim in a prison setting is clear:

The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.... If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.' ... Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)); *accord, e.g., Jackson v. Johnson*, 15 F.Supp.2d 341, 363–64 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *see also, e.g., James v. Artuz*, 93 Civ.2056, 1998 WL 50206 at *3 (S.D.N.Y. Feb. 6, 1998); *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878 at *6 (S.D.N.Y. Nov. 17, 1997) (Sotomayor, D.J.); *LaBounty v. Coombe*, 95 Civ. 2617, 1996 WL 684168 at *10 (S.D.N.Y. Nov. 26, 1996); *Baker v. Zlochowon*, 741 F.Supp. 436, 439 (S.D.N.Y.1990) ("If the retaliatory actions would have been taken on a constitutionally valid basis in any event, summary judgment is warranted" for defendant).

 The Second Circuit has advised that the prison administration's actions should be granted deference:

A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."

*Graham v. Henderson*, 89 F.3d at 79 (quoting *Lowrance v. Achtyl*, 20 F.3d at 535); *accord, e.g., Jackson v. Johnson*, 15 F.Supp.2d at 364; *James v. Artuz*, 1998 WL 50206 at *3; *LaBounty v. Coombe*, 1996 WL 684168 at *10. Prisoners' claims

of retaliation must be examined with skepticism and particular care because they are " 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d at 79 (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *accord, e.g., Jackson v. Johnson,* 15 F.Supp.2d at 364; *see also, e.g., Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995); *Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998) (Sotomayor, D.J.) (prisoner retaliation claims " 'bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial' "); *Gadson v. Goord,* 1997 WL 714878 at *6; *Gill v. Pact Org.,* 95 Civ. 4510, 1997 WL 539948 at *12 (S.D.N.Y. Aug. 28, 1997).

■ Ali claims that when he received "the first forms to sue ... [he] began to get harassed with threats by other officers—harassment to [his] religious practices with overt discrimination and attempted discrimination—metal in my food, etc." (Am.Cplt.¶ IV(2).) The Court construes these allegations as stating separate claims for "general" retaliation and religious discrimination retaliation, and addresses the former in this section.

Ali cannot maintain his general retaliation claim that he "began to get harassed with threats by other officers," because he does not claim, much less submit any evidence, that Officers Szabo and Dalo or the Sheriff had any personal involvement in the general harassment. When Ali was asked at his deposition for the names of the officers who harassed and threatened him, Ali stated that the person who harassed him was Officer Carollo, who Ali admits did not carry out his threats, and in any event, is not a defendant:

[Ali] I had asked you all about an Officer Carollo (ph) and they—the response was that we don't have no officer there.... *You know, the name is near Carollo.* I mean, I might have mistaken it. *He threatened me* as well as threatened other prisoners.

Q What kind of threat did he make to you?

A We don't like leaders here. You better take care of yourself, not worry. We'll do this to you. We'll get you down there and me and my boys, we can do something to you.

. . . . .

Q *Did the officer ever do anything to you or carry out on those threats in any way?*

A *No, he didn't carry out the threats, obviously.* Well, I'm alive.

Q I don't mean just as far as killing you, but—

A *No, he didn't do nothing to carry it out.* He just did like the basic little harassments of people that I might talk with....

(Ali Dep. at 85–86, emphasis added; *see also* Ali Rule 56.1 Stmt. ¶ 26.) Ali's allegation that an officer who is not a defendant harassed him should be dismissed. *See, e.g., Fominas v. McCarthy,* 165 F.3d 13 (table), 1998 WL 802054 at *1 (2d Cir. Nov. 13, 1998) (dismissing prisoner's retaliation complaint because it "did not allege that any of the named defendants engaged in any acts of retaliation against [plaintiff]. Nor did it allege that they had any direct involvement in, foreknowledge of, or responsibility for the alleged retaliation"); *Champion v. Artuz,* 76 F.3d 483, 486–87 (2d Cir.1996) (dismissing prisoner's retaliatory search complaint because "neither of the present defendants had any personal involvement in that search"); *Walsh v. Cummaro,* 97 Civ. 5429, 1998 WL 655566 at *2 (S.D.N.Y. Sept. 24, 1998) (dismissing prisoner's complaint that officer fired him from his prison job in retaliation for filing two lawsuits against other corrections officers because complaint "does not allege that [defendant] was personally involved in the retaliation" and "does not connect [defendant] to the alleged retaliation"); *Jackson v. Johnson,* 15 F.Supp.2d 341, 365–66 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.) (dismissing plaintiff's retaliatory

transfer claim because plaintiff did not show that defendants were personally involved in the transfer decision); [10] *Higgins v. Coombe*, 95 Civ. 8696, 1997 WL 328623 at *11 (S.D.N.Y. June 16, 1997) (Sotomayor, D.J.) (dismissing plaintiffs retaliation claims because he "fail[ed] to allege facts demonstrating that defendants ... had any direct involvement, knowledge of, or responsibility for the alleged retaliatory acts against plaintiff").

Likewise, Ali's retaliation claim that someone put metal in his food should be dismissed because, again, Ali does not claim or submit any evidence that defendants were personally involved. The only evidence regarding this incident consists of Ali's deposition testimony that on "December 22," Ali returned from court and was given food in which he found metal. (Ali Dep. at 90.) Ali thereafter notified "a very nice officer" who said, "I don't know how it got in there...." (*Id.* at 91.) Since Ali never alleges that defendants had anything to do with putting metal in his food, this claim too should be dismissed. *See* cases cited at pages 27–28, 29–30, 32–33 above.

Ali makes only one retaliation allegation involving the personal involvement of any of the defendants—Officer Szabo. Ali testified at his deposition that: "Officer Szabo tried to—I'm walking, you know, I'm standing someplace and there's maybe just enough room for two to three encyclopedias to come through, and he made it his business to try to push his way through there. I ignored it." (Ali Dep. at 86.)

The Court has serious doubts that squeezing by a prisoner once could rise to the level of unconstitutional retaliation, but even assuming arguendo that it could, the claim fails because Ali has not indicated any damages caused by the incident.[11] *See, e.g., Wesley v. Kalos*, 97 Civ. 1598, 1997 WL 767557 at *5 (S.D.N.Y. Dec. 11, 1997) (dismissing retaliatory transfer complaint because "even assuming the transfer was a constitutional violation," has not "indicated any damages caused thereby"); *Gadson v. Goord*, 1997 WL 714878 at *7 (dismissing retaliation complaint that defendants withheld medical records and legal papers after searching plaintiff's cell, because "plaintiff has not alleged anything to indicate that the confiscation in fact interfered with his court access ... [and] plaintiff's property has been returned to him"); *Higgins v. Coombe*, 1997 WL 328623 at *5 (dismissing claims that officers retaliated against prisoner by removing police reports attached to a habeas petition and refused to let him make an "emergency" phone call, because prisoner "alleges no actual injury from [the officers'] purported conduct"); *Ramirez v. Holmes*, 921 F.Supp. 204, 207, 209 (S.D.N.Y.1996) (dismissing prisoner's complaints that he was once denied access to the law library and that an officer filed a false misbehavior report, because plaintiff failed to allege any injury as a result of these incidents); *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y.1995) (Sotoma-

---

10. In an excess of caution, in *Jackson v. Johnson*, Judge Kaplan required that defendants submit an affidavit affirming that they had no personal involvement in Jackson's alleged retaliatory transfer before granting defendants summary judgment on Jackson's retaliation claim. *See id.* at 353; *see also Jackson v. Johnson*, 30 F.Supp.2d 613, 616 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.) (granting summary judgment on retaliatory transfer claim when defendants submitted affidavits of no personal involvement). The Court does not think that this step is necessary in this case because it is clear from Ali's complaint and deposition testimony that he does not allege any per-

sonal involvement of the defendants, while Jackson's papers were more vague.

11. If Ali is alleging an excessive force claim on the grounds that Officer Szabo once squeezed by him, under the applicable standards set forth in Point II above, it is clear that squeezing by a prisoner once does not rise to the level of a constitutional violation. *See, e.g., Malloy v. DeFrank*, 95 Civ. 9122, 1996 WL 631725 at *5–6 (S.D.N.Y. Oct. 31, 1996) (Peck, M.J.) ("Corrections Officer['s] ... push of plaintiff ... does not rise to the level of a constitutional violation. It was just a push in the back" and was "de minimis"), and cases cited therein.

yor, D.J.) (dismissing prisoner's complaint that officers searched his cell and destroyed his legal papers because he failed to show injury as a result).

In short, all defendants should be granted summary judgment on Ali's general retaliation claims for lack of personal involvement and/or because Ali suffered no harm.

### VII. OFFICERS SZABO AND DALO SHOULD BE GRANTED SUMMARY JUDGMENT ON ALI'S RELIGIOUS DISCRIMINATION RETALIATION CLAIMS FOR LACK OF PERSONAL INVOLVEMENT, BUT THE SHERIFF SHOULD BE DENIED SUMMARY JUDGMENT BECAUSE HE HAS NOT SHOWN THAT AN OFFICIAL POLICY BANNING KUFIS DID NOT PREVENT OR DISCOURAGE ALI FROM WEARING A KUFI

Ali alleges that he suffered religious discrimination retaliation at Putnam. (Cplt.¶ IV(2).) Specifically, Ali claims that "[u]nder the direction of the Sheriff attempts were made to prohibit wearing Kufi," i.e., religious Muslim headwear, and that Ali was the only person in possession of a kufi "when attempts were being made to limit them"; also, his religious festival was "violated by the introduction of meat he previously informed authorities would be violative"; he was "denied . . . his zikr beads"; he was "harassed when he discussed Islam [versus] other religions or was engaged in proselytizing"; he was denied the opportunity to "perform[ ] Wudu"; he and other Muslims were "harassed during Ramadan and the procedure was constantly violated"; and he was "transferred . . . from one side where all the Muslims were to another side where there were no Muslims." (Ali Br. at 17–19; Ali Rule 56.1 Stmt. ¶ 26–27, 29; Ali Dep. at 87–90, 93, 95–96.)

The only defendant Ali names as being personally involved in the religious dis-

crimination is the Sheriff, in connection with his ban on kufis. (E.g., Ali Rule 56.1 Stmt. ¶ 29: "The Sheriff . . . attempted to push a policy of no Kufi wearing.") Ali does not state who perpetrated the other alleged violations of his religious practices, nor does he claim, much less submit any evidence, that Officers Szabo or Dalo were personally involved in these incidents. Officers Szabo and Dalo therefore should be granted summary judgment on Ali's religious discrimination retaliation claim for lack of personal involvement. See, e.g., Salahuddin v. Coughlin, 999 F.Supp. 526, 540–42 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.) (granting warden summary judgment because inmate failed to show warden's personal involvement in alleged religious discrimination); Show v. Patterson, 955 F.Supp. 182, 188 (S.D.N.Y.1997) (granting warden and captain summary judgment on, inter alia, inmate's religious discrimination claim, for lack of personal involvement); see also cases cited at pages 27–28, 29–30, 32–33, 36–37 above.

Ali alleges that the Sheriff attempted to restrict his right to wear a kufi by instituting a "new rule book" banning the wearing of kufis. (Ali Rule 56.1 Stmt. ¶ 29; Ali Dep. at 87.) Ali did not submit the rule book to the Court with his summary judgment papers, but he did submit an undated rule book with his Pretrial Order. (Ali Pretrial Order: Putnam Rule Book Rule 299.19: "Hats may be worn to and from outdoor recreation only . . ."; id. Rule 310.32: "Inmates shall wear religious items and garments at scheduled and structured services and ceremonies only, or as approved."; id. Rule 229.32.a: "Prayer caps may only be worn during religious services and in your cell.") The Sheriff also submitted an undated rule book containing Rule 310.32, allowing inmates to wear religious garments at services only, or as approved. (Seymour Aff. Ex. E: Putnam Rule Book Rule 310.32.) The Sheriff, however, does not deny in his Rule 56.1 Statement that he instituted a ban on kufis, stating only that "a thorough

investigation [was conducted] as to whether plaintiff would be allowed to wear his religious headgear, or kufis, as the law concerning same was not clear." (Defs.Rule 56.1 Stmt. ¶ 29.) The "investigation" referred to by the Sheriff appears to refer to a memo from Lt. Robert Le-Fever to Ali, stating that the effect of the new headwear rule on Ali's right to wear a kufi was "unclear" and that they were gathering information before making a conclusive decision:

> You question a rule in the forthcoming revision of the facility rule book as to your ability to wear the head covering as practiced by your faith. The facts of the wearing of head covers are not clear. The new rule governing the wearing of head covers has a greater meaning than the rights of few individuals. The rights of all individuals confined in the facility and the safe and secure operation of the Facility are the considerations in any rule or regulation. The gathering of information to make a conclusive decision has been more time consuming and complicated than had been anticipated. For these reasons the enforcement of a rule or a portion of a rule governing the wearing of head covering for religious beliefs will be held in abeyance until a legal determination is made.

(Seymour Aff.Ex. D: LeFever Memo to Ali.) The Court therefore must assume for purposes of this summary judgment motion that the Sheriff instituted a rule banning headwear that arguably applied to kufis while Ali was at Putnam, and that at a minimum the uncertainty as to the rule's application discouraged Ali from wearing his kufi.

The Supreme Court has held that: "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citations omitted). Limitations on the exercise of such constitutional rights, however, "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* at 348, 107 S.Ct. at 2404. In *O'Lone v. Estate of Shabazz*, the Supreme Court reiterated that the proper standard for determining whether a prison regulation impinges on inmates' constitutional rights is whether the limitation is reasonably related to a legitimate penological interest:

> To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

*Id.* at 349, 107 S.Ct. at 2404 (citations omitted);[12] *see also, e.g., Turner v. Safley,*

12. The Court notes that since the Supreme Court declared the Religious Freedom Restoration Act ("RFRA") unconstitutional, *see City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the reasonableness standard set forth in *O'Lone* remains the proper standard under which to analyze prisoners' religious discrimination claims. *See, e.g., Acosta v. McGrady,* No. Civ. A. 96–2874, 1999 WL 158471 at *5 & n. 2 (E.D.Pa. March 22, 1999) (applying *O'Lone's* reasonableness standard to state prisoner's religious discrimination claim since "the Supreme Court recently declared RFRA inapplicable to state regulations and

agencies"); *Sutton v. Stewart,* 22 F.Supp.2d 1097, 1102 (D.Ariz.1998) (applying *O'Lone's* reasonableness standard after *City of Boerne v. Flores*); *Sledge v. Cummings,* 995 F.Supp. 1276, 1280 (D.Kan.1998) ("In *Werner v. McCotter,* the Tenth Circuit Court of Appeals relied on [RFRA].... After our first order, the Supreme Court in *City of Bourne v. Flores ...,* declared that RFRA is unconstitutional. *Boerne* effectively overruled *Werner,* and this Court therefore relies on pre-RFRA precedent which requires only that [state prison] policies which affect inmates' free exercise rights be reasonably

482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); *Fromer v. Scully,* 874 F.2d 69, 72 (2d Cir.1989); *Malik'El v. NYS Dep't of Correctional Servs.,* No. 96–CV–669, 1998 WL 187459 at *5 (N.D.N.Y. April 8, 1998) (Pooler, D.J.); *Fominas v. Kelly,* 739 F.Supp. 139, 142 (W.D.N.Y.1990). The factors to be considered in determining whether a prison regulation violates a prisoner's freedom of religion are: "(1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest." *Benjamin v. Coughlin,* 905 F.2d at 574 (citing *Turner v. Safley,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62); *see also, e.g., Fromer v. Scully,* 874 F.2d at 72.

 Under *O'Lone,* the Sheriff must, at least, allege a legitimate penological purpose for imposing a restriction on wearing kufis. However, the Sheriff has not offered any explanation for why he imposed the rule (or what the rule allowed or forbade). It is clearly not enough under *O'Lone* that the Sheriff conducted "a thorough investigation as to whether plaintiff would be allowed to wear his religious headgear, or kufis, as the law concerning same was not clear." (Defs.Rule 56.1 Stmt. ¶ 29; Defs.Br. at 21.) Accordingly, since the Sheriff has not presented any evidence that the regulation restricting kufis is reasonably related to a valid penological interest, the Sheriff should be denied summary judgment on Ali's religious discrimination retaliation claim. *See, e.g., Burgin v. Henderson,* 536 F.2d 501, 504 (2d Cir.1976) (remanding to determine whether "a rule barring all hats of whatever size, style, or religious significance is necessary to prevent hiding weapons");

related to legitimate penological inter-

*Balabin v. Scully,* 606 F.Supp. 176, 180 (S.D.N.Y.1985) (denying motion to dismiss where plaintiff claimed that prison officials confiscated religious items including a yarmulke without legitimate reason); *cf. Muhammad v. Lynaugh,* 966 F.2d 901, 902–03 (5th Cir.1992) (prison regulation restricting wearing of kufi caps except in cells and in religious services upheld where prison officials showed that "shanks and razor blades, could easily be secreted inside a Kufi cap"); *Benjamin v. Coughlin,* 905 F.2d at 579 (upholding prison regulation prohibiting the wearing of Rastafarian crowns, because prison officials showed that the crowns were large and could conceal contraband, even though prison allowed wearing of yarmulkes and kufis); *Butler–Bey v. Frey,* 811 F.2d 449, 451 (8th Cir.1987) (upholding prohibition on the wearing of fezes in prison where prison officials showed that the fezes could be used for smuggling contraband); *Sutton v. Stewart,* 22 F.Supp.2d 1097, 1102–03 (D.Ariz.1998) (upholding reasonable restrictions on prisoner's wearing of kufis); *Malik'El v. NYS Dep't of Corrections,* 1998 WL 187459 at *6 (prison regulation restricting the size of kufis "is not unreasonable in view of security concerns"); *Sledge v. Cummings,* 995 F.Supp. 1276, 1281 (D.Kan.1998) (upholding reasonable restrictions on prisoner's wearing of kufis).

Because the scope of the Sheriff's headwear policy is unclear on this record, and there is no evidence as to the justification for the policy, the Sheriff should be denied summary judgment on Ali's religious discrimination retaliation claim.

### CONCLUSION

For the reasons set forth above, because there is a material factual dispute as to whether Officers Szabo and Dalo used excessive force on Ali, and because there is a factual dispute as to whether the Sheriff's restriction on kufis is related to a legitimate penological interest, I recommend that the Court deny summary judgment on Ali's excessive force claim against Officers

ests.").

Szabo and Dalo, and on his religious discrimination retaliation claim against the Sheriff. Because Ali has not demonstrated any personal involvement by the defendants in the rest of his excessive force, general retaliation, denial of medical treatment and religious discrimination claims, I recommend that the Court grant defendants summary judgment on those claims.

The case is now trial ready on twenty-four hours' notice.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMEN-DATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, 40 Foley Square, Room 234, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Pauley. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

June 15, 1999.