Herbert **HART**, Plaintiff,

v.

**WESTCHESTER COUNTY DEPART-MENT OF SOCIAL SERVICES,**
Defendant.

**No. 98 Civ. 8034(WHP).**

United States District Court,
S.D. New York.

March 30, 2001.

Herbert Hart, New York City, NY, pro se.

Cedric Taylor, Coalition for the Homeless, New York City.

Joan C. Waters, Assistant County Attorney, White Plains, NY.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

*Pro se* plaintiff Herbert Hart ("Hart") brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Westchester County Department of Social Services ("WCDSS") violated his constitutional rights by reducing his public assistance grant and denying him emergency financial relief. WCDSS moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and Hart moves for discovery sanctions pursuant to Rule 37(b). For the reasons set forth below, WCDSS's motion for summary judgment is granted in part and denied in part and Hart's motion for sanctions is denied.

## FACTUAL BACKGROUND

The following facts are not in dispute. Hart, a 67–year old African–American, began receiving public assistance in 1989. (Pl.'s Aff. of Facts in Opp. to Mot. for Summ. J. ("Hart Aff.") ¶ 4, 5; Decl. of Habeeb Mohammed ("Mohammed Decl.") ¶ 3.) In May 1995, WCDSS modified Hart's monthly public assistance budget to provide a rent allowance of $350, cash assistance of $58, $115 in food stamps, and medical coverage. (Hart Aff. ¶ 9; Decl. of

Joan C. Waters ("Water Decl.") Ex. C: WCDSS Budget.) Thereafter, Hart authorized WCDSS to remit the $350 rent allowance directly to his landlord Greenow Realty ("Greenow"). (Hart Aff. ¶ 10, Ex. B: Request for Vendor Payment.)

In August 1995, Hart applied for federal social security income benefits ("SSI") and was advised that the Social Security Administration would notify WCDSS when his SSI payments commenced. (Hart Aff. ¶ 13.) Hart apprised his WCDSS case worker of his SSI application. (Hart Aff. ¶ 11.) In October 1995, Hart began receiving SSI payments in the amount of $350. (Hart Aff. ¶ 14.) By letter dated November 27, 1995, WCDSS claims to have notified Hart that state law required that his SSI benefit would be deducted from his state public assistance grant. (Waters Decl. Ex. G: Notice of Intent to Change Benefits.) Hart asserts that he never received that November 1995 notice. (Hart Aff. ¶ 15.) On December 15, 1995, WCDSS reduced Hart's public assistance by the amount of his SSI benefit and began remitting only $58 to Greenow.

On January 31, 1996, Hart requested a hearing to review the $350 reduction in public assistance. (Waters Decl. Ex. H: Notice.) A WCDSS investigator met with Hart at his home on March 11, 1996 to review his eligibility and a hearing was scheduled by WCDSS for March 22, 1996. (Waters Decl. Ex. H: Notice.) In the interim, a deputy marshal for the City of Yonkers served an eviction warrant demanding that Hart vacate his residence by March 27, 1996 for rental arrears of $919. (Hart Aff. ¶¶ 16, 17, Ex A.: Eviction Warrant.) For reasons that are not elucidated in the record, Hart failed to appear at the WCDSS hearing on March 22, 1996. (See Waters Decl. Ex. J: Default Notice.)

On March 27, 1996, Hart informed Mohammed Habeeb, his WCDSS case worker, of his imminent eviction and requested emergency funding. By mistake, Habeeb furnished Hart with the wrong application form; the following day, Habeeb provided Hart with the proper form for Emergency Adult Assistance ("EAA"). (Hart Aff. ¶ 18, 19, 21, Ex. D: Recertification Form.) That same day, Hart submitted his EAA request and WCDSS denied it. (Hart Aff. ¶ 22, 23.) WCDSS's decision denying EAA advised Hart:

> Your rent is $350.00 and your total welfare grant is only $58.00 after deduction of your [SSI benefit] of $350 per month. Dept. of Social Services, under these circumstances, cannot capture your future rent for payment directly to the landlord.

(Hart Aff. Ex. G: EAA Decision.) Later on March 28, 1996, Hart was evicted and rendered homeless. (Hart Aff. ¶ 23.)

The notice denying Hart's EAA application advised him that he had two alternative avenues for review: an informal conference or a fair hearing. Hart opted for a fair hearing and on April 1, 1996, he requested both by telephone and certified mail that the hearing be expedited. (Hart Aff. 27; Ex. H: Certified Mail Receipt.) Despite the fact that Hart was homeless, WCDSS scheduled the hearing for May 21, 1996. (Waters Decl. Ex. M: Fair Hearing Notice.) On April 4, 1996, the fair hearing was adjourned inexplicably from May 21 to July 3, 1996. On the July 3 adjourn date, Hart withdrew his request for a fair hearing for reasons not revealed on the record before this Court. (Waters Decl. Ex. N: Notice of Fair Hearing.)

On January 23, 1998, Hart filed this civil action claiming equal protection and procedural due process violations pursuant to the Fifth and Fourteenth Amendments and intentional infliction of emotional distress under New York law.

## DISCUSSION

### I. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir.1997). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

Although the same standards for summary judgment apply when a *pro se* litigant is involved, such a litigant "should be given special latitude in responding to a summary judgment motion." *Ayala v. Bellevue Hosp.*, No. 94 Civ. 1551(WHP), 1999 WL 637235 at *4 (S.D.N.Y. Aug. 20, 1999); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) ("special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment"). Thus, a pro se litigant's complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

### II. *Hart's Procedural Due Process Claim*

■ "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982)). A plaintiff must demonstrate that the denial of the constitutional or federal statutory right occurred under color of state law. *See* 42 U.S.C. § 1983; *Ali v. Szabo*, 81 F.Supp.2d 447, 453 (S.D.N.Y.2000) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988)); *Jackson v. Johnson*, 15 F.Supp.2d 341, 355 (S.D.N.Y.1998); *Williams v. Kane*, 95 Civ. 0379(JGK)(AJP), 1997 WL 527677 at *3 (S.D.N.Y. Aug. 25, 1997). Proof that state procedural law was violated does not by itself constitute a deprivation of due process because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990); *accord, e.g., Ali*, 81 F.Supp.2d at 453; *Jackson*, 15 F.Supp.2d at 356; *Williams*, 1997 WL 527677 at *3.

### A. The Reduction of Public Assistance Benefits

■ Hart asserts a property interest in his state public assistance benefits. (See Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. ("Hart's Mem. in Opp.") at 8–9.) A recipient's property interest in continuing welfare benefits is well-established. See Goldberg v. Kelly, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Reynolds v. Giuliani, 35 F.Supp.2d 331, 341 (S.D.N.Y.1999); Richardson v. Kelaher, No. 97 Civ. 0428(LAP), 1998 WL 812042 at *4–5 (S.D.N.Y. Nov. 19, 1998). WCDSS argues that Hart's due process claim fails because he neglected to participate in a pre-deprivation fair hearing or a post-deprivation proceeding in state court pursuant to N.Y. Civ. Prac. L. & R. 7803(3) ("Article 78").

■ In general, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). This principle applies with heightened scrutiny in the context of welfare benefits. Welfare recipients rely on their benefits for their survival, and thus are constitutionally guaranteed an evidentiary hearing before their benefits are discontinued. Goldberg, 397 U.S. at 264, 90 S.Ct. at 1018 (1970) (requiring a pretermination hearing because "termination of aid pending resolution of a controversy may deprive an eligible recipient of the very means by which to live while he waits"); see also Richardson, 1998 WL 812042 at *5. Although Hart's public assistance benefits were not terminated, the reduction of benefits rendered him homeless. See Richardson, 1998 WL 812042 at *5 (applying Goldberg standards to an New York City Department of Social Service's decision to restrict public assistance due to

plaintiff's eligibility for Social Security income).

Due process in this circumstance requires that Hart be given timely and adequate notice detailing the reasons for the termination of benefits, and an effective opportunity to be heard at an evidentiary hearing. Richardson, 1998 WL 812042 at *5 (citing Goldberg, 397 U.S. at 267–68, 90 S.Ct. at 1020); see also Atkins v. Parker, 472 U.S. 115, 148, 105 S.Ct. 2520, 2539, 86 L.Ed.2d 81 (1985) (requiring "timely and adequate notice detailing the reasons" for proposed adverse administrative action). The hearing "need not take the form of a judicial or quasi-judicial proceeding" but must be held "at a meaningful time and in a meaningful manner." Goldberg, 397 U.S. at 267, 90 S.Ct. at 1020; Richardson, 1998 WL 812042 at *5.

■ Apart from the question of whether WCDSS sent timely notice, which presents a triable issue of fact, WCDSS's notice must have also been adequate. Under the Goldberg requirements for adequate notice, a public welfare recipient must be given information sufficient to avail him of the opportunity to defend the impending termination of his benefits. See Richardson, 1998 WL 812042 at *5 (citing Henry v. Gross, 803 F.2d 757, 766 (2d Cir.1986)). Written notice must include a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing, and the circumstances under which assistance is continued if a hearing is requested. See Richardson, 1998 WL 812042 at *5 (comparing federal notice standards under 45 C.F.R. § 205.10(a)(4)(i)(B), enacted pursuant to Goldberg, and "similar although not identical" regulatory provisions adopted by New York law in 18 N.Y. Comp.Codes R. &

Regs. § 358); *see also Catone v. Spielmann,* 966 F.Supp. 1288, 1298 (N.D.N.Y. 1997) (adversely affected party was entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and the opportunity to present his side of the story").

The last line of WCDSS's Reduction Notice advises: "You have the right to appeal this decision. Be sure to read the back of this notice on how to appeal." However, because WCDSS did not provide the back of the notice, this Court has no way of determining whether Hart received adequate information about his right to appeal.

■ WCDSS claims that the notice is irrelevant because Hart could have sought a post-deprivation hearing proceeding in state court pursuant to N.Y. Civ. Prac. L. & R. 7803(3) ("Article 78"). However, "[o]nce a cause of action for a constitutional violation accrues, nothing the state does can subsequently cut-off the § 1983 action." *Patterson v. Coughlin,* 761 F.2d 886, 893 (2d Cir.1985); *see also Richardson,* 1998 WL 812042 at *6 quoting *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (Procedural due process does not depend upon the merits of a claimant's substantive assertions.). Accordingly, WCDSS motion for summary judgment with respect to its reduction of Hart's public assistance grant is denied.

**B. *Denial of Emergency Assistance***

Hart claims that WCDSS violated his right to due process by wrongly denying him emergency benefits. (Pl.'s Mem. in Opp. at 8.) WCDSS argues that Hart was not entitled to emergency benefits, and that Hart failed to participate in a pre-deprivation fair hearing or a post-deprivation Article 78 proceeding.

■ To hold a property interest in emergency benefits, Hart must have "more than a unilateral expectation" but a "legitimate claim of entitlement" to that benefit. *See Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *McMenemy v. City of Rochester,* No. 00–7199, 2001 WL 208999 at *6 (2d Cir. Mar. 2, 2001). The amount of discretion in awarding a benefit determines whether a claim to entitlement exists. *See Colson ex rel. Colson v. Sillman,* 35 F.3d 106, 108 (2d Cir.1994); *Luck v. Mazzone,* 52 F.3d 475, 477 (2d Cir.1995) (internal citation omitted) (entitlement derives from "existing rules or understandings that stem from an independent source such as state law."). New York State regulations provide in part:

> Each social services district *shall,* when provision cannot otherwise be made, grant EAA to meet emergency needs of eligible persons residing in the district [for] . . . rent incurred during the four-month period prior to the month in which such person applies for emergency assistance for adults when payment of such expenses is necessary to prevent eviction and in the judgment of the social services official, other housing accommodations appropriate for the person's best interest are not available in the area.

N.Y. Comp.Codes R. & Regs., tit. 18 § 397.5(3) (emphasis added). So long as an applicant meets all other EAA eligibility requirements, he is entitled to either an EAA grant or a determination that more appropriate housing is available.

The reason for WCDSS's denial of EAA is unclear. WCDSS's notice of denial explained that because Hart's state public assistance grant was reduced to $58 per month, WCDSS could not "capture" Hart's future rent for payment directly to the landlord. (Water Decl. Ex. L: Notice De-

nying Emergency Assistance.) In its supporting declaration, WCDSS argues that its EAA denial was based on Hart's failure to pay his rent in the past and the lack of any "indication that he was capable of maintaining his residence in the future." (Reply Decl. ¶ 4.) WCDSS also argues that it denied Hart's application because "he had the means to pay [h]is own rent, if he so chose." (Reply Decl. ¶ 5.) WCDSS's contradictory statements regarding the bases for its EAA denial do not adequately rebut Hart's assertion that he had a property interest in EAA assistance.

Moreover, New York law provides that an individual is ineligible for EAA assistance or any other state program, New York's Emergency Home Relief ("EHR") offers a one-time emergency assistance payment to people facing eviction[1] for nonpayment of rent. *See* 18 N.Y. Comp. Codes R. & Regs., tit. 18 § 370; *see also Kelly v. Kaladjian,* 155 Misc.2d 652, 653–54, 589 N.Y.S.2d 730, 732 (N.Y. County 1992). The EHR program provides in relevant part:

> Social services districts *must* authorize safety net assistance to provide for ... (1) an identified emergency need ... [i.e.] a serious occurrence or situation needing prompt action ... (2) [to an] individual ... without income or resources immediately available to meet the emergency need ... (3) [when] the emergency need cannot be met under ... safety net assistance programs.... (5) ... To receive assistance to pay shelter arrears, the applicant must sign an agreement to repay the assistance in a period not to exceed 12 months from receipt of such assistance. The repayment agreement must set forth a schedule of payments that will assure repayment within the 12–month period.[2]

N.Y. Comp.Codes R. & Regs., tit. 18 § 370.3 (emphasis added). WCDSS does not address Hart's assertion of a property interest in EHR benefits.

Instead, WCDSS responds that Hart could have sought redress through a fair hearing and, if necessary, an Article 78 proceeding for judicial review. *See, e.g.,* N.Y. Soc. Serv. Law ¶ 22(1) (fair hearing); N.Y. Civ. Prac. L. & R. § 7803(2), (3). On April 1, 1996, Hart requested a fair hearing which WCDSS finally scheduled for July 3, 1996. The reasons behind the three month delay[3] have not been explicated in the record on this motion. Indeed, WCDSS does not contest Hart's assertion that the delay in scheduling the expedited hearing constitutes the due process violation. WCDSS offers no facts or law suggesting that a 90–day delay for a fair hearing on the denial of EAA or EHR benefits affords Hart the process that is due. Accordingly, WCDSS's motion for summary judgment is denied with respect to Hart's procedural due process claim regarding WCDSS's denial of emergency welfare benefits.

## III. *Hart's Equal Protection Claim*

Hart alleges that WCDSS allows whites unfettered access to emergen-

---

**1.** EHR grants are also available for other purposes, including replacement costs for furniture or clothing, funeral expenses and camp fees. *See* 18 N.Y. Comp.Codes R. & Regs., tit. 18 § 370.3.

**2.** While the EHR regulation requires applicants to sign an agreement scheduling repayment of the grant within a 12–month period, a welfare agency may not condition EHR assistance on the applicant's demonstration of an ability to repay the grant within 12 months. *Richardson v. Comm. of New York City Dep't of Social Servs.,* 88 N.Y.2d 35, 39, 643 N.Y.S.2d 19, 21, 665 N.E.2d 1059 (1996).

**3.** New York law also provides that Hart was entitled to "[p]riority in scheduling of [his] hearing and determination" on his EAA appeal. *See* N.Y.C.R.R. § 358–3.2.

cy assistance grants while restricting African–Americans from those benefits. (Pl.'s 56.1 Stmt. ¶ 6.) The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1. At its core, the Equal Protection Clause prohibits the disparate treatment of similarly situated individuals. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Thus, the threshold inquiry in any equal protection analysis is whether the defendants treated the complainant differently than others who were similarly situated. *See Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254; *see also Cuoco v. U.S. Bureau of Prisons,* No. 98 Civ. 9009(WHP), 2001 WL 167694, at *4 (S.D.N.Y. Feb. 16, 2001). To prove an equal protection violation, the plaintiff must prove purposeful discrimination directed at an identifiable or suspect class. *See Kadrmas v. Dickinson Pub. Schs.,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).

Hart offers no evidence of disparate treatment and relies solely on his conclusory statement that "[u]pon information and belief, the defendant provides similarly situated white persons emergency assistance grants without such restrictions to prevent their homelessness as well as other ... service mandated under [New York law.]" (Hart Aff. ¶ 31.) Hart's unsupported allegation is not sufficient to defeat summary judgment. *See Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 65 (2d Cir. 1997); *Cuoco,* 2001 WL 167694, at *4 (bald faced allegations of an equal protection violation insufficient as a matter of law); *Wilke v. Wing,* No. 96 Civ. 1360, 1998 WL 690864 at *5 (N.D.N.Y. Sept. 30, 1998) (summary judgment granted where equal

protection claim was supported only by sweeping allegations).

**D.** *Racial Discrimination Under 42 U.S.C. § 1981*

▉ To state a claim under 42 U.S.C. § 1981, Hart must set forth facts establishing: (1) membership in a racial minority, (2) intent to discriminate on the basis of race by defendant, and (3) discrimination concerning one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Mere conclusory allegations do not suffice to support a section 1981 claim. *Yusuf v. Vassar College,* 35 F.3d 709, 713–14 (2d Cir.1994). Hart's affidavit states only that WCDSS "provides similarly situated white persons emergency assistance grants without restrictions to prevent their homelessness." (Hart Aff. ¶ 31.) Hart's mere suspicion or surmise is inadequate to support a section 1981 claim. *See Ghaznavi v. Days Inns of Am.,* 91 Civ. 4520(MBM), 1993 WL 330477 at *3 (S.D.N.Y. Aug 20, 1993). Accordingly, WCDSS's motion for summary judgment with respect to Hart's section 1981 claim is granted.

**V.** *Intentional Infliction of Emotional Distress*

▉ To state a claim for intentional infliction of emotional distress under New York law, Hart must show: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Arena v. Agip,* No. 95 Civ. 1529(WHP), 2000 WL 264312 at *4 (S.D.N.Y. Mar. 8, 2000); *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). "'Liability has been

found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Arena,* 2000 WL 264312 at *4 (internal citations omitted). At most, Hart alleges that WCDSS personnel made the wrong decision within the scope of their employment. Hart's allegations do not rise to the level of "extreme and outrageous" conduct contemplated by New York law. *See, e.g., Stuto v. Fleishman,* 164 F.3d 820 (2d Cir.1999) (alleged acts of coercion and misrepresentation causing denial of disability benefits were not extreme and outrageous conduct); *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (even if bank employee established that she was polygraphed by her employer because of her race, such conduct would not have provided legally adequate grounds for intentional infliction of emotional distress claim under New York law); *Nevin v. Citibank, N.A.,* 107 F.Supp.2d 333, 345 (S.D.N.Y.2000) (allegations that racial profiling caused department store to single out shopper for surveillance, inquiry, and police investigation did not meet the extraordinarily high bar set for tort of intentional infliction of emotional distress). Accordingly, WCDSS is granted summary judgment on Hart's intentional infliction of emotional distress claim.

## VI. *Punitive Damages against a Municipality*

◼ Punitive damages are not available in a section 1983 action against a municipality except in an "extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267 n. 29, 101 S.Ct. 2748, 2760 n. 29, 69 L.Ed.2d 616; *see also Ciraolo v. City of New York,* 216 F.3d 236, 240 (2d Cir.2000);

*Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 262 (2nd Cir.1997). Hart makes no allegation that the taxpayers are responsible for the denial of his benefits. Accordingly, summary judgment is granted to WCDSS with respect to Hart's claim for punitive damages.

## VI. *Rule 37(b) Sanctions Motion*

On March 24, 2000, Hart submitted a motion pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure to preclude WCDSS from "offering any evidence [at] trial on the issue of whether denial of the public assistance benefits was proper." (*See* Affidavit of Herbert Hart, dated Apr. 18, 2000.) Hart asserts that he served discovery requests for records documenting the food stamps and housing payments made on Hart's behalf from 1989 through 1996, but that WCDSS responded only with records for 1995 and 1996. WCDSS responds that it provided all records relating to this request still in its possession, and that records prior to 1995 have been purged pursuant to WCDSS policy. (*See* Decl. of Joan C. Waters, dated April 18, 2000 ¶ 6.)

◼ A party's failure to comply with discovery orders may be sanctioned consistent with Rule 37(b)(2)(B), which authorizes courts to impose various sanctions, including the preclusion of evidence. Rule 37(d) extends these sanctioning powers to parties who do not respond to discovery requests. However, preclusion of evidence is a harsh remedy, "justified ... when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991); *see also John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (dismissal under Rule 37 is justified where party "fails to comply

with the court's discovery orders willfully, in bad faith, or through fault"). Hart filed his complaint on January 28, 1998, more than three years after the creation of the records. WCDSS had no notice that it should preserve these records, and Hart has not demonstrated that WCDSS acted in the culpable manner that would warrant the sanction of preclusion. Accordingly, Hart's Rule 37(b)(2)(B) motion is denied.

## CONCLUSION

WCDSS's motion for summary judgment with respect to plaintiff's due process claim regarding the reduction of his state public assistance grant benefits and denial of emergency benefits is denied. WCDSS's motion for summary judgment with respect to Hart's claims under the Equal Protection Clause, 42 U.S.C. § 1981, and for intentional infliction of emotional distress, and punitive damages is granted. Hart's Rule 37(b)(2)(B) motion for discovery sanctions is denied. A pretrial conference in this matter is scheduled for May 4, 2001 at 11:15 a.m.